STAINLESS VALVE CO., Plaintiff
v.
SAFEFRESH TECHNOLOGIES, LLC, Defendant

No. COA13-144

Filed 3 December 2013

**Agency—contract to purchase equipment—limited liability company—actual authority**

The trial court erred in granting summary judgment in favor of defendant Safefresh in an action to collect on an invoice for valves manufactured by plaintiff and sold to Mr. Garwood, who held positions with both Safefresh and American Beef Processing LLC. There was sufficient evidence forecasted to create a genuine issue of material fact as to whether Mr. Garwood was acting with actual authority on behalf of Safefresh during 2008 negotiations, which resulted in the production of the valves.

Judge McCULLOUGH concurring.

Appeal by plaintiff from order entered 20 September 2012 by Judge W. David Lee in Union County Superior Court. Heard in the Court of Appeals 14 August 2013.

*Weaver, Bennett & Bland, P.A., by Trent M. Grissom, for plaintiff-appellant.*

*Caldwell, Helder, Helms, & Robison, P.A., by Aimee E. Bennington n/k/a Aimee E. Brockington and R. Kenneth Helms, for defendant-appellee.*

HUNTER, Robert C., Judge.

Plaintiff Stainless Valve Company ("plaintiff" or "Stainless Valve") appeals the order granting defendant Safefresh Technologies, LLC's ("defendant's" or "Safefresh's") motion for summary judgment. After careful review, we reverse the trial court's order and remand for proceedings consistent with this opinion.

## Background

At some point in the early 2000's, Anthony Garwood ("Mr. Garwood"), the president of Safefresh, began communicating with Dirk Lindenbeck, the president of Stainless Valve, regarding a specific type of valve for a food processing application being developed by defendant. During these initial communications, Mr. Garwood identified himself as president of Safefresh. However, these discussions did not result in a contract because, according to Mr. Garwood, the quoted cost to manufacture the valves was "too expensive."

Between those initial discussions and 2008, there was no communication between Mr. Garwood and Dirk Lindenbeck. In 2008, Mr. Garwood contacted plaintiff regarding the production of two specific types of Stargate-O-Port-Valves (the "valves"). Dirk Lindenbeck had retired at this point, but his son, Axel Lindenbeck, was the president of Stainless Valve. Defendant contends that, although Mr. Garwood remained a manager of Safefresh, during these later communications, he contacted plaintiff only in his capacity as the president and chief executive officer of American Beef Processing, LLC ("ABP") and not on behalf of Safefresh. In an affidavit filed in support of defendant's motion for summary judgment, defendant stated that ABP and Safefresh are two different entities that are not affiliated with each other except that ABP has been granted an exclusive license for meat processing technologies invented and developed by Safefresh. However, he admits to being both a manager of Safefresh and of ABP. In support of its contention, defendant relies on the fact that, in all the communications included in the record from the 2008 negotiations, Mr. Garwood either identified himself individually or as the president and CEO of ABP.

In the midst of numerous discussions regarding the type of valves Mr. Garwood wanted manufactured, Stainless Valve provided price

STAINLESS VALVE CO. v. SAFEFRESH TECHS., LLC

[231 N.C. App. 286 (2013)]

quotations for each type of valve. All of Stainless Valve's price quotes were addressed to Safefresh. At no time during these communications did Mr. Garwood inform Stainless Valve that ABP, and not Safefresh, was the principal on whose behalf he was working. On 25 June 2008, Mr. Garwood, as an agent, and plaintiff entered into an agreement for the production of both types of valves via email. On the email accepting Stainless Valve's offer to manufacture the valves, Mr. Garwood does not identify himself as the agent of either Safefresh or ABP; instead, he simply signs it "Tony." At some point between 25 and 30 June 2008, Stainless Valve received purchase orders from Mr. Garwood to manufacture the valves. However, these purchase orders are not included in the record on appeal but are only referenced in a 30 June 2008 email from Stainless Valve to Mr. Garwood. Plaintiff required a total down payment of $48,400, which Mr. Garwood wired from ABP's account. On 18 November 2008, the valves were then shipped to Mr. Garwood; the packing slip indicates that they were shipped to Mr. Garwood at Safefresh in Washington state. After delivery, plaintiff issued a final invoice for payment and sent it to Mr. Garwood at Safefresh. On 19 November 2008, Mr. Garwood contacted Nora Lindenbeck, vice president and chief financial officer of Stainless Valve, via email and requested she reissue these invoices to ABP. He also informed her that the purchase order and deposits were both issued by ABP. These final invoices were reissued to Mr. Garwood at ABP. Dirk Lindenbeck testified during his deposition that it was customary for a customer to send an invoice to a third party or bank for payment. Plaintiff never received any payment on the final invoices.

Plaintiff filed a complaint against Safefresh based on claims of breach of contract and unjust enrichment. On 19 April 2010, defendant filed a motion to dismiss for failure to state a claim upon which relief could be granted and lack of personal jurisdiction.[1] On 24 January 2011, defendant filed another motion to dismiss pursuant to Rule 12(b)(7). Specifically, defendant contended that plaintiff improperly brought a cause of action against defendant when the real party in interest was ABP. The matters came on for hearing on 7 February 2011. The trial court denied both motions to dismiss.

After discovery, defendant moved for summary judgment, arguing that no issues of material fact existed as to whether Safefresh

---

1. In this motion to dismiss, defendant also alleged that plaintiff's complaint should be dismissed for failing to name the real party in interest pursuant to Rule 17 of the North Carolina Rules of Civil Procedure. However, defendant later withdrew the Rule 17 motion to dismiss.

and Stainless Valve entered into a contract and that it was entitled to judgment as a matter of law. The matter came on for hearing on 17 September 2012. The trial court concluded that plaintiff failed to forecast any evidence that Safefresh authorized any acts done by its agent Mr. Garwood or that, after the acts were completed, Safefresh ratified them. Accordingly, the trial court granted defendant's motion for summary judgment and dismissed the complaint with prejudice. Plaintiff appealed.

## Arguments

Plaintiff's sole argument on appeal is that the trial court erred in granting summary judgment because there is a genuine issue of material fact as to whether Safefresh is liable to plaintiff for the balance due under the contract based on the acts by Mr. Garwood. Specifically, plaintiff contends that it has "presented testimony and evidence that demonstrate that it was more than reasonable for it to believe it was working with [Safefresh] in the production of the requested valves, and not [ABP][,]" citing the numerous correspondence it sent to Mr. Garwood in his capacity as the president of Safefresh including the quotes, order confirmations, and initial final invoices. Consequently, plaintiff alleges that this issue should have been decided by a jury.

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (internal quotation marks omitted). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 353 (2009) (quoting N.C. Gen. Stat. § 1A–1, Rule 56(c) (2007)). The burden is on the moving party to show the lack of any "triable issue," and "[a]ll inferences of fact must be drawn against the movant and in favor of the nonmovant." *Lord v. Beerman*, 191 N.C. App. 290, 293, 664 S.E.2d 331, 334 (2008).

In order to hold an alleged principal liable to a third party for the acts of his agent,

> [t]he plaintiff has the burden of proving that a particular person was at the time acting as a servant or agent of the defendant. An agent's authority to bind his principal cannot

> be shown by the agent's acts or declarations. This can be shown only by proof that the principal authorized the acts to be done or that, after they were done, he ratified them. One who seeks to enforce against an alleged principal a contract made by an alleged agent has the burden of proving the existence of the agency and the authority of the agent to bind the principal by such contract.

*Simmons v. Morton*, 1 N.C. App. 308, 310, 161 S.E.2d 222, 223 (1968). Accordingly, plaintiff has the burden of showing that Mr. Garwood was acting as an agent for Safefresh at the time the parties entered into negotiations in 2008. This Court has stated that:

> There are three situations in which a principal is liable upon a contract duly made by its agents: when the agent acts within the scope of his or her actual authority; when the agent acts within the scope of his or her apparent authority, and the third person is without notice that the agent is exceeding actual authority; and when a contract, although unauthorized, has been ratified.

*Wachovia Bank of N.C., N.A. v. Bob Dunn Jaguar, Inc.*, 117 N.C. App. 165, 170, 450 S.E.2d 527, 531 (1994). Thus, if Stainless Valve forecasted any evidence to create a genuine issue of material fact whether Mr. Garwood was acting within the scope of his actual authority, that he was acting within the scope of his apparent authority, or that Safefresh ratified the contract, the trial court would have been precluded from entering summary judgment in favor of Safefresh.

"Actual authority is that authority which the agent reasonably thinks he possesses, conferred either intentionally or by want of ordinary care by the principal." *Harris v. Ray Johnson Const. Co., Inc.*, 139 N.C. App. 827, 830, 534 S.E.2d 653, 655 (2000). It "may be implied from the words and conduct of the parties and the facts and circumstances attending the transaction in question." *Id.*

Plaintiff argues that Mr. Garwood had actual authority to bind defendant because it reasonably believed that Mr. Garwood was acting on behalf of Safefresh. In support of its contention, plaintiff relies on the fact that it directed almost all of its correspondence, including the purchase order and quotes, to Mr. Garwood at Safefresh. In contrast, defendant argues that Mr. Garwood did not have actual authority because he was acting on behalf of ABP when he re-established communications with Safefresh in 2008.

Based on the evidence in the record, we conclude that there exists a genuine issue of material fact as to whether Mr. Garwood, as the manager of Safefresh, an LLC, was acting within the scope of his actual authority when he contracted with Stainless Valve.

> The [LLC] Act contains numerous "default" provisions or rules that will govern an LLC only in the absence of an explicitly different arrangement in the LLC's articles of organization or written operating agreement. Because these default provisions can be changed in virtually any way the parties wish, an LLC is primarily a creature of contract.

Russell M. Robinson, II, Robinson on North Carolina Corporation Law § 34.01 (7th ed. 2012). Pursuant to N.C. Gen. Stat. § 57C-3-23,

> [e]very manager is an agent of the limited liability company for the purpose of its business, and the act of every manager, including execution in the name of the limited liability company of any instrument, for apparently carrying on in the usual way the business of the limited liability company of which he is a manager, binds the limited liability company, unless the manager so acting has in fact no authority to act for the limited liability company in the particular matter and the person with whom the manager is dealing has knowledge of the fact that the manager has no authority.

Consequently, by default, as manager of Safefresh, Mr. Garwood had authority to bind Safefresh to Stainless Valve unless the articles of organization or operating manual provided otherwise.

Here, the record contains evidence that Mr. Garwood did have actual authority given that he had initially contacted Stainless Valve previously in his capacity as the president of Safefresh for the purpose of entering into a contract with it to manufacture certain valves. Moreover, while it appears that in every written communication included in the record on appeal in which Mr. Garwood identified himself as acting on behalf of any entity, he did so only as the president and CEO of ABP, that fact alone is not controlling. In the 25 June 2008 acceptance email in which Mr. Garwood accepted Stainless Valve's offer to manufacture the valves, he simply signed the email as "Tony" without indicating whether he was doing so on behalf of Safefresh or ABP. Viewing this evidence in a light most favorable to Stainless Valve, Mr. Garwood's silence on that email in conjunction with the fact that he had originally contacted Stainless

Valve in his capacity as the president of Safefresh creates a genuine issue of material fact whether he acted within the scope of his actual authority an as an agent of Safefresh in 2008. In addition, the fact that Mr. Garwood requested Stainless Valve reissue the final invoices to ABP is not conclusive. At no time prior to the goods being shipped did Mr. Garwood contact Stainless Valve to request they reissue any other correspondence to ABP. In fact, until the 19 November email, months after the parties began negotiating, Mr. Garwood never informed Stainless Valve that ABP was the client despite numerous quotes and other correspondence Stainless Valve sent to him addressed to Safefresh. In other words, it is undeniable that Mr. Garwood remained silent for months even though it was apparent that Stainless Valve believed that Safefresh was the client, not ABP.

In totality, although the record is not devoid of evidence suggesting that Mr. Garwood was acting in his capacity as the manager of ABP, there was sufficient evidence forecasted to create a genuine issue of material fact as to whether Mr. Garwood was acting with actual authority on behalf of Safefresh during the 2008 negotiations. Thus, the trial court erred in granting summary judgment in favor of Safefresh. Because there was a genuine issue of material fact whether Mr. Garwood had actual authority, it is not necessary to address the other situations in which a principal can be bound to a third party for the acts of its agent.

## Conclusion

Because Stainless Valve produced sufficient evidence that Mr. Garwood had actual authority from Safefresh during the 2008 negotiations between the parties that resulted in a contract, we reverse the trial court's order granting summary judgment in favor of defendant.

REVERSED AND REMANDED.

McCULLOUGH, Judge, concurring.

I concur in the majority opinion but write separately as I believe some basic principles of contract law also dictate that this case is one that should not be decided on summary judgment. In their treatise on North Carolina Contract Law, Hutson & Miskimon state:

> Acceptance by conduct is a well-recognized rule in North Carolina, and the formation of implied-in-fact contracts has already been discussed. Although there are many decisions implying a promise to pay where one party

silently – but knowingly and voluntarily – accepts services rendered by another with the expectation of payment, and the recipient enjoys the benefit of those services, these decisions allow a recovery based on quantum merit or a contract implied in law. The more difficult involves the issue of when does one party's silence and inaction give rise to a valid contract that is considered by the product of actual agreement? As a general rule, mere silence by an offeree is not sufficient to manifest assent to an offer, and in fact at least one court has emphatically declared that "[s]ilence and inaction do not amount to an acceptance of an offer." However, that is an overstatement because, under some circumstances, a party may be required to speak when to remain silent would justifiably permit an offeror to infer that silence is a manifestation of assent. Whether an offeree's silence manifests assent to an offer is a question of fact that may depend upon industry custom to determine when an offer is normally accepted or rejected.

In *Anderson Chevrolet/Olds, Inc. v. Higgins* the court of appeals essentially – albeit without acknowledgment – approved of the *Restatement of Contracts* approach to acceptance occurring either by the offeree's silence or exercise of dominion over the offeror's property. Under this approach, silence and inaction in the face of an offer communicated to the intended recipient will operate as an acceptance:

> (1)(a) "Where the offeree with reasonable opportunity to reject offered goods or services takes the benefit of them under circumstance which would indicate to a reasonable man that they were offered with the expectation of compensation . . . .

> (c) Where because of previous dealings or otherwise, the offeree has given the offeror reason to understand that the silence or inaction was intended by the offeree as a manifestation of assent, and the offeror does so understand.

> (2) Where the offeree [exercises dominion over things which are] offered to him, such [exercise of dominion] in the absence of other circumstances is an acceptance.

The *Anderson* court's approval of this language appears consistent with North Carolina law and the majority of other jurisdictions.

John N Hutson, Jr. & Scott A. Miskimon, North Carolina Contract Law 82-84 (LexisNexis 2001).

The acceptance by silence or conduct principles are well-settled, although not encountered often. In the case of *The T.C. May Company v. The Menzies Shoe Company*, 184 N.C. 150; 113 S.E. 593 (1922), our Supreme Court stated:

> The definition of a contract as an agreement to which the law attaches obligation implies, among other essential elements, the mutual assent of the parties, which generally results from an offer on the one side and acceptance on the other. The offer, when communicated is a mere proposal to enter into the agreement, and must be accepted before it can become a binding promise; but when it is communicated, and shows an intent to assume liability, and is understood and accepted by the party to whom it is made, it becomes at once equally binding upon the promisor and the promise. 1 Page on Contracts (2 ed.), sed. 74 *et seq.*; 1 Elliott on Contracts, sec. 27 *et seq.* Such acceptance may be manifested by words or conduct showing that the offeree means to accept; for, while it is generally held that the intention to accept is a necessary element of acceptance, the question of intent may usually be resolved by what the offeree did or said. As a general rule, his mere silence will not amount to assent; but if he declines to speak when speech is admonished at the peril of an inference from silence, his silence may justify an inference that he admits the truth of the circumstance relied on or asserted.

*Id.* at 152, 113 S.E. at 593 (citations omitted).

In the case *sub judice* I believe that Garwood had this duty to speak and his failure to come forward when he sent the acceptance email where he signed as "Tony" makes this a classic case where a jury should decide for which of his LLC's did he act when that email was sent to Plaintiff.

Therefore, I believe the majority opinion has correctly decided that summary judgment is inappropriate. I concur separately because I believe the case law and the summary of contract law set forth above further our understanding of why this is so.