Plasman v. Decca Furniture (USA), Inc., 2016 NCBC 78.

STATE OF NORTH CAROLINA

CATAWBA COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 2832

CHRISTIAN G. PLASMAN, in his
individual capacity and derivatively
for the benefit of, on behalf of and
right of nominal party BOLIER &
COMPANY, LLC,

   Plaintiff,

v.

DECCA FURNITURE (USA), INC.,
DECCA CONTRACT FURNITURE,
LLC, RICHARD HERBST, WAI
THENG TIN, TSANG C. HUNG,
DECCA FURNITURE, LTD., DECCA
HOSPITALITY FURNISHINGS,
LLC, DONGGUAN DECCA
FURNITURE CO. LTD., DARREN
HUDGINS, DECCA HOME, LLC,
and ELAN BY DECCA, LLC,

   Defendants,

and BOLIER & COMPANY, LLC,

   Nominal
Defendant,

v.

CHRISTIAN J. PLASMAN a/k/a
BARRETT PLASMAN,

   Third-Party
Defendant.

ORDER AND OPINION ON
DEFENDANTS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND
MOTION TO DISMISS
SUPPLEMENTED AND AMENDED
THIRD PARTY COUNTERCLAIMS

1. **THIS MATTER** is before the Court upon Defendants Decca Furniture (USA), Inc. ("Decca USA"), Decca Contract Furniture, LLC ("Decca Contract"), Decca Hospitality Furnishings, LLC ("Decca Hospitality"), Decca Home, LLC ("Decca Home"), Elan by Decca, LLC ("Elan," together with Decca USA, Decca Contract, Decca Hospitality, Decca Home, and Elan, the "Decca Defendants"),

Richard Herbst ("Herbst"), Darren Hudgins ("Hudgins"), Wai Theng Tin ("Tin"), and nominal defendant Bolier & Company, LLC's ("Bolier," together with the Decca Defendants, Herbst, Hudgins, and Tin, the "Defendants") (i) Motion to Dismiss Plaintiff Christian G. Plasman's ("Chris Plasman" or "Plaintiff") Second Amended Complaint (the "Motion to Dismiss Complaint") and (ii) Motion to Dismiss Third Party Defendant Christian J. Plasman's ("Barrett Plasman," together with Chris Plasman, the "Plasmans") Supplemented and Amended Third Party Counterclaims (the "Motion to Dismiss Counterclaims", collectively, the "Motions") in the above-captioned case.[1]

2.     The Court, having considered the Motions, briefs in support of and in opposition to the Motions, and arguments of counsel made at a hearing on the Motions, hereby **GRANTS** the Motions.

> *Law Offices of Matthew K. Rogers, PLLC, by Matthew K. Rogers, for Plaintiff Christian G. Plasman, and Third-Party Defendant Christian J. Plasman a/k/a Barrett Plasman.*
>
> *McGuireWoods LLP, by Robert A. Muckenfuss, Jodie H. Lawson, Andrew D. Atkins, Elizabeth Zwickert Timmermans, and Anita M. Foss, for Defendants Decca Furniture (USA), Inc., Decca Contract Furniture, LLC, Richard Herbst, Wai Theng Tin, Tsang C. Hung, Decca Furniture, Ltd., Decca Hospitality Furnishings, LLC, Dongguan Decca Furniture Co. Ltd., Darren Hudgins, Decca Home, LLC, Elan by Decca, LLC, and Nominal Defendant Bolier & Company, LLC.*

Bledsoe, Judge.

---

[1] Defendants Tsang C. Hung ("Tsang"), Decca Furniture Ltd. ("Decca China"), and Dongguan Decca Furniture Co. Ltd. ("Decca China Plant") have not yet joined the Motions because Plaintiff has not yet filed proof of service for those Defendants. (Def.'s Mot. Dismiss Compl. 1 n.1.)

## I.
## PROCEDURAL HISTORY

3.     Plaintiff Chris Plasman originally filed this action in October 2012, and Defendants subsequently removed the matter to the United States District Court for the Western District of North Carolina (Voorhees, J.) in December 2012.  The federal court entered a preliminary injunction in February 2013 (the "P.I. Order"), and, in September 2014, the federal court dismissed Chris Plasman's federal copyright infringement claim, declined to exercise supplemental jurisdiction, and remanded the case to this Court for all further proceedings.

4.     Upon remand, the parties filed a number of substantive motions, which this Court resolved in a May 26, 2015 order and opinion.  *Bolier & Co., LLC v. Decca Furniture (USA), Inc.,* 2015 NCBC LEXIS 55 (N.C. Super. Ct. May 26, 2015). In that opinion, the Court ruled on Plaintiff's Motion to Amend Complaint, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, Defendants' Motion to Strike Supplemental Pleadings, Defendants' Motion to Dismiss Barrett Plasman's Counterclaims, along with various other motions not relevant to the present matter.

5.     This Court concluded in its May 26, 2015 Order that the "First Amended Complaint and proposed Second Amended Complaint reveal[ed] fatal deficiencies on their face."  *Bolier*, 2015 NCBC LEXIS 55, at *9.  The First Amended Complaint also asserted claims "in a confusing, unfocused manner" by grouping claims together illogically and failing to make clear whether claims were brought individually or on Bolier's behalf and which Defendants were allegedly liable for

which claims.  *Id.* at *11.  Nevertheless, the Court, in the exercise of its discretion and under the specific circumstances in this case, determined that it was appropriate "to provide Chris Plasman another chance to amend the operative complaint to attempt to state legally cognizable claims in this action."  *Id.* at *13. Therefore, the Court granted Chris Plasman's Motion to Amend and denied in part as moot Defendants' Motion to Dismiss Plaintiff's First Amended Complaint.  The Court also denied in part as moot Defendants' Motion to Dismiss Barrett Plasman's Counterclaims.

6.  Chris Plasman filed his Second Amended Complaint on June 25, 2015. Barrett Plasman filed his Supplemented and Amended Third Party Counterclaims on the same day.[2]  In lieu of filing an answer, Defendants filed the present Motions

---

[2] The Court did not technically grant Barrett Plasman leave to amend.  Instead, the Court anticipated that Barrett Plasman would refile any counterclaims at a procedurally appropriate time, if Defendants elected to file any third-party claims after answering the Second Amended Complaint:

> [G]iven that the Court has permitted Chris Plasman to file a revised second amended complaint, the Court notes that Defendants will thereafter be required to answer or otherwise respond and may or may not elect to include third-party claims against Barrett Plasman, depending on the revised complaint allegations and Defendants' ability to assert third-party claims under N.C. R. Civ. P. 14 against "a person not a party to the action who is or may be liable to [the party] for all or part of the [party's] claim against him." N.C. R. Civ. P. 14(a) (2014). Accordingly, in light of the current procedural context, the Court concludes, in its discretion, that Defendants' Motion to Dismiss Barrett Plasman's Counterclaims in his individual capacity should be denied as moot at this time, without prejudice to Defendants' right to move to dismiss any individual claims or third-party counterclaims that Barrett Plasman may file against Defendants in this action, as Defendants may deem appropriate.

*Bolier*, 2015 NCBC LEXIS 55, at *17.  Nevertheless, Defendants did not challenge the timeliness of Barrett Plasman's filing, and the Court elects to evaluate Barrett Plasman's pleading on the merits.

on September 22, 2015. The Motions have been fully briefed, and the Court held a hearing on the Motions on December 17, 2015, at which all parties were represented by counsel. The Motions are now ripe for resolution.

II.

FACTUAL BACKGROUND

7. The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those allegations in the Second Amended Complaint that are relevant and necessary to the Court's determination of the Motions.[3]

8. Chris Plasman alleges that he is an experienced furniture executive, who in 2002 started Bolier, a furniture business whose name is a Plasman family name. (SAC ¶¶ 35–38.) Chris Plasman approached Defendants Tsang, Herbst, and Decca China, who manufactured furniture, about partnering to run Bolier.[4] (SAC ¶¶ 42–43.) Plaintiff alleges that Decca China become Bolier's sole supplier and then "insisted" that its affiliated entity, Decca USA, own part of Bolier. (SAC ¶ 56.) Plaintiff contends that Herbst promised him that Bolier would operate as a 50/50 partnership, although on paper Decca USA would own the majority interest. (SAC ¶¶ 57–65.) In August of 2013, Chris Plasman and Decca USA executed Bolier's Operating Agreement, which identified Chris Plasman and Decca USA as Bolier's only members. (SAC ¶¶ 81–84.) Under the express terms of the written Operating

---

[3] The Second Amended Complaint alleges specific conduct occurring between 2002 and 2015, contains 515 numbered paragraphs, asserts 21 separate claims, and attaches 53 exhibits.

[4] Plaintiff alleges that Tsang is now Chairman of the Board of Decca USA. (SAC ¶ 2.)

Agreement, Chris Plasman is a 45% owner, and Decca USA is a 55% owner of Bolier. (SAC ¶¶ 331.)

9. At the end of August 2003, by written resolution, Chris Plasman began serving as Bolier's President and CEO, and Herbst began serving as Bolier's Vice President, Secretary, and Treasurer. (SAC ¶¶ 88–89.) Chris Plasman signed an employment agreement, which addressed his job duties, salary, and grounds for termination. (SAC Ex. 12.) In 2005, Chris Plasman hired his son, Barrett Plasman, as Bolier's Operations Manager. (SAC ¶ 105.)

10. Decca USA provided legal, accounting, and administrative services to Bolier, and invoiced Bolier for the cost of these services.[5] (SAC ¶ 104.) The cost of these Contract Services became a point of contention between Chris Plasman, as Bolier's President, and Decca USA. (SAC ¶ 111.) Nevertheless, Chris Plasman licensed Bolier's name and designs to Decca China.[6] (SAC ¶¶ 135–36.) Under the licensing agreements, Decca China and its subsidiaries and affiliates would sell Bolier products in foreign markets and pay royalties to Bolier based on sales. (SAC ¶ 137–38.)

11. Continuing through 2012, Chris Plasman and Decca USA clashed over the cost of the Contract Services, the amount of the royalties paid to Bolier, and

---

[5] Plaintiff alleges that Decca USA entered into contracts with Bolier to provide Administrative Services, Legal Services and Accounting Services, which he collectively defines and references as "Contract Services." (SAC ¶ 104.) The Court will use "Contract Services" hereafter as defined by Plaintiff in the Second Amended Complaint.

[6] Regarding the role of Decca China, Plaintiff alleges that "[u]nder Tsang and Herbst's control, Decca China controls Decca Group, and causes Decca China Plant to manufacture furniture for Bolier, and ships and causes to be shipped furniture manufactured for Bolier." (SAC ¶ 29.)

numerous other matters regarding the operation of Bolier. (SAC ¶¶ 139–74.) On October 19, 2012, Herbst informed Chris Plasman that Decca USA was terminating the employment of both Chris and Barrett Plasman, citing the cost of their salaries as untenable. (SAC ¶¶ 198–99, 211.) Chris Plasman alleges that Decca USA lacked the authority to terminate either of the Plasmans. (SAC ¶¶ 208–09.)

12. Despite receiving notice of their terminations, the Plasmans contend that they continued to work for Bolier. (SAC ¶¶ 216.) On January 14, 2013, Decca USA locked out the Plasmans from Bolier's premises. (SAC ¶ 220.) Barrett Plasman attempted to enter Bolier's offices, but Tin and Hudgins—whom the Second Amended Complaint identifies as officers and directors of Decca USA—along with Defendants' counsel and the High Point Police Department denied him entry and told him that his employment was terminated and that he was no longer allowed on Bolier's property. (SAC ¶¶ 222–27.) Shortly thereafter, Defendants informed Bolier's employees at an employee meeting that the Plasmans' employment had been terminated. (SAC ¶ 228.) Defendants also sent a letter to Bolier customers regarding the Plasmans' employment termination, and Defendants' counsel sent a letter to Bank of North Carolina informing the bank that the Plasmans lacked the authority to make transactions in Bolier's name. (SAC ¶¶ 237, 469.) The Plasmans allege that Defendants made numerous defamatory statements about them at the employee meeting and in the letters to Bolier customers and Bank of North Carolina employees.

13. In the Second Amended Complaint, filed after the issuance of the P.I. Order, Chris Plasman alleges that his relationship with Decca USA has deteriorated. Specifically, Plaintiff alleges that Decca USA routinely rejects or refuses to vote on matters he proposes at Bolier's bi-annual member meetings, contrary, he alleges, to the Operating Agreement and the terms of the P.I. Order. (SAC ¶¶ 309, 319, 325.)

## III.

## LEGAL STANDARD

14. The question for the Court on a motion to dismiss under N.C. R. Civ. P. 12(b)(6) is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987) (citation omitted). "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. Cnty. Of Person*, 141 N.C. App. 273, 277–78, 540 S.E.2d 415, 419 (2000) (citing *Dixon v. Stuart*, 85 N.C. App. 338, 354 S.E.2d 757 (1987)).

15. Rule 12(b)(6) dismissal is proper in any of three scenarios: "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's

claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985) (citations omitted).

16. The Court may consider documents attached to the pleadings without converting Defendants' Motions under Rule 12(b)(6) into a motion for summary judgment under Rule 56. *See, e.g.*, *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d. 858, 862 (2009) (stating "documents attached, specifically referred to, or incorporated by reference in the complaint" may properly be considered in a Rule 12 motion to dismiss without converting it to a motion for summary judgment) (citation omitted). A "trial court can reject allegations that are contradicted by the documents attached, specifically referred to, or incorporated by reference in the complaint." *Id.*

IV.

ANALYSIS

A. Motion to Dismiss Second Amended Complaint

17. The Second Amended Complaint asserts twenty-one claims for relief, many of which are identified as both direct and derivative claims, and Defendants move for dismissal of all claims under Rules 8 and 12(b)(6).[7]

(1) Dismissal Under Rule 8

18. Defendants contend, and the Court agrees, that the Second Amended Complaint has failed to fully cure those defects identified in the Court's prior order and opinion. The Second Amended Complaint still fails to "specify against which

---

[7] The Second Amended Complaint enumerates twenty claims for relief, but in doing so numbers two distinct claims as the nineteenth claim for relief.

Defendant or Defendants the alleged claims are asserted" and "asserts a number of claims for relief in a confusing, unfocused manner." *Bolier*, 2015 NCBC LEXIS 55, at *11. As an example of the former, Plaintiff captions his misappropriation of trade secrets claim as against Decca USA, Decca China, Decca Contract, Decca Hospitality, and Decca Home, but the allegations in support of that claim for relief fail to identify any involvement by Decca Contract or Decca Hospitality and instead focus on conduct by Defendants Tin and Hudgins.[8] (SAC ¶¶ 474–80.) As an example of the latter, the Second Amended Complaint groups together allegations under the heading "Seventh and Eighth Claims for Relief: Self-Dealing and Misappropriation of Corporate Opportunities – Derivatively for the Benefit of Bolier and Directly on behalf of Plasman as Minority Member[.]" (SAC ¶ 379.) This convoluted method of grouping claims is exacerbated by the Second Amended Complaint's repeated failure to distinguish between harm suffered by Bolier and harm suffered by Chris Plasman, despite the well-established rule that "shareholders . . . generally may not bring individual actions to recover what they consider their share of the damages suffered by the corporation." *Barger v. McCoy*

---

[8] As a further example, the Second Amended Complaint relies on broad allegations that the Plaintiff intends to hold most of the Defendants liable for most of the causes of action:

> Herbst, Tin, Hudgins, and Tsang are officers and directors of one or more of Decca China, Decca USA, Decca Contract, Decca Hospitality, Decca Home, Decca Classic, and Decca China Plant, and do not distinguish between actions taken by or for specific entities. For most of the allegations herein, each of the forgoing individuals and purported business entities are jointly and severally liable, and the actions and omissions of one or more of the named parties is attributable to one or more of the individuals and business entities because they act as agents and representatives of the other defendants.

(SAC ¶ 23.)

*Hillard & Parks*, 346 N.C. 650, 660, 488 S.E.2d 215, 220–21 (1997). *See also Atkinson v. Lackey*, 2015 NCBC LEXIS 21, at \*14 (N.C. Super. Ct. Feb. 27, 2015) (applying the *Barger* rule to LLCs).

19. In addition, the Second Amended Complaint has not fully cured its "fail[ure] to make clear which claims are brought by Chris Plasman and which claims are purportedly brought by Bolier." *Bolier*, 2015 NCBC LEXIS 55, at \*11. For instance, while Plaintiff has separately captioned his individual and derivative breach of fiduciary duty claims, several of the allegations under each section state that various Defendants breached "fiduciary duties to Bolier and [Chris] Plasman" without distinction. (*See* SAC ¶¶ 336, 337, 347.)

20. As a whole, and despite its length, the Second Amended Complaint is generally imprecise, and the peculiarities of this pleading have made the consideration of Defendants' Motions exceedingly burdensome. The Court therefore concludes that the Second Amended Complaint is not "sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief." N.C. R. Civ. P. 8(a)(1). After having already afforded Plaintiff the opportunity to re-plead his claims and specifically identified the ways in which Plaintiff's First Amended Complaint and Proposed Second Amended Complaint were insufficient, the Court, in the exercise of its discretion, concludes that the Second Amended Complaint's noncompliance with Rule 8 provides an alternate basis for dismissal in addition to the grounds identified under Rule 12(b)(6).

(2) Dismissal Under Rule 12(b)(6)

a. Breach of Contract

21.    In order to establish a claim for breach of contract, Plaintiff must show the existence of a valid contract and the breach of the terms of that contract.  *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000).  Plaintiff brings an individual and a derivative breach of contract claim.

i.  Breach of Contract – Individual Claim

22.    In his individual breach of contract claim, Chris Plasman alleges that Decca China and Decca USA breached contracts with him by refusing to make him a 50% member, terminating his employment, making hiring decisions without his approval, and refusing to allow him to collect accounts receivable.  (SAC ¶ 370–76.) All of the alleged acts of breach, however, are defeated by the actual terms of Bolier's Operating Agreement and other documents attached to the Second Amended Complaint.

23.    First, Chris Plasman alleges that section 5.1(c) of the Operating Agreement, in addition to other contract provisions, prohibited his termination and guaranteed him lifetime employment with Bolier.  That provision of the Operating Agreement, however, only addresses capital contributions, and states in its entirety that "Chris[] Plasman will work for the Company and $450.00 shall be withheld from his first monthly paycheck and will constitute his Capital Contribution." (SAC, Ex. 10, hereinafter "Operating Agreement," § 5.1(c).)

24. Chris Plasman likewise contends that he is entitled to lifetime employment under section 6.4 of the Operating Agreement, which states that "[t]he Members shall devote to the Company as much time as they deem necessary for the proper performance of their duties hereunder, and [Chris] Plasman, during the period of his employment by the Company, shall be expected to devote his full time to such duties." (Operating Agreement § 6.4.) Plaintiff's reading of that provision is contrary to the plain meaning of the language; section 6.4 does not address the issue of lifetime employment, and the qualifying phrase "during the period of his employment" naturally implies that there may be a time when he is not employed by the Company. Indeed, the joint resolution electing Chris Plasman as President of Bolier, which is one of the contracts Chris Plasman alleges was breached, clearly envisions that his employment will only last "until his successor is duly chosen and qualified." (SAC Ex. 9.)

25. Chris Plasman additionally alleges in his individual claim that various Defendants breached sections 6.1(c), 6.5, and 6.6 of the Operating Agreement. Those provisions provide that: "the Members, subject to the terms, provisions and restrictions of this Agreement, are hereby authorized to make [a wide variety of management and business] decisions[,]" (Operating Agreement § 6.1(c)); "the Members may appoint individuals [as] president, Vice President, Treasurer and Secretary[,]" (Operating Agreement § 6.5); and "[t]he Members may at any time employ any other Persons . . . to perform services for the Company and its business[.]" (Operating Agreement § 6.6.)

26. Plaintiff's theory is that Decca USA breached these provisions of the Operating Agreement by terminating his employment and making business decisions with which he disagreed in frustration of his own ability to act under these provisions of the Operating Agreement. Plaintiff's interpretation, however, ignores clear language in the Operating Agreement giving ultimate decision-making authority to the Majority in Interest: "Except as otherwise provided in this Agreement . . . all decisions or actions of the Company, the Company's 'managers' (as such term is defined in the [LLC] Act) or the Members shall require the approval, consent, agreement, or vote of the Majority in Interest." (Operating Agreement § 6.1(a).) Because the documents attached to the Second Amended Complaint reveal that Decca USA was the Majority in Interest, it had the ultimate authority to undertake the actions about which Chris Plasman complains. Therefore, Plaintiff's allegations are insufficient to sustain an individual breach of contract claim on those provisions.

27. Chris Plasman's flawed assumption that Decca USA cannot cause Bolier to act without his consent, despite accepting a minority interest in an Operating Agreement that explicitly grants control to the Majority in Interest, is a common vein that runs throughout his opposition to Defendants' Motion to Dismiss the Second Amended Complaint. As seen below, a number of the claims in the Second Amended Complaint depend on Chris Plasman's belief that he and Decca USA were equal owners of Bolier, a belief squarely in conflict with the unambiguous terms of the Operating Agreement.

28. In addition to these specific contractual provisions, Chris Plasman alleges that various Defendants breached other oral and unidentified contracts ensuring that Chris Plasman would be a 50% owner of Bolier and always be its top officer. (SAC ¶¶ 370–71.) Chris Plasman alleges that these contracts arose from the parties' course of dealings, *Meiselman*-type expectations, and other inexact sources. (SAC ¶ 370.) Plaintiff's attempts to rely on these contracts must fail for several reasons. First, the Second Amended Complaint makes only conclusory and non-specific statements that such contracts existed, and "[a]n allegation that a valid contract exists between parties is a legal conclusion" not entitled to a presumption of validity. *Charlotte Motor Speedway, LLC v. Cnty. of Cabarrus*, 230 N.C. App. 1, 6, 748 S.E.2d 171, 175 (2013). Second, even if Plaintiff had sufficiently pleaded the existence of oral or implied contracts, the written documents repeatedly speak to the contrary, and our case law clearly holds that "an express contract precludes an implied contract with reference to the same matter." *Keith v. Day*, 81 N.C. App. 185, 198, 343 S.E.2d 562, 570 (1986) (quoting *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713–14, 124 S.E.2d 908, 908 (1962)).

29. As noted above, Chris Plasman's allegations are contrary to the unambiguous terms of the Operating Agreement; section 6.1(a) vests the Majority in Interest, here Decca USA, with the final authority over officers and employees. Moreover, in a letter attached to the Second Amended Complaint and dated August 23, 2003, Richard Herbst proposed to Chris Plasman the terms of the Operating Agreement, including a term that "Decca will hold 55% of the capital of the new

'Bolier & Company, LLC'. You will hold 45%." (SAC Ex. 7.) As explained more fully below, in the face of the explicit language of the Operating Agreement and in the absence of any language supporting Chris Plasman's claims that he could not be terminated, the Court concludes that Chris Plasman's attempts to rely on oral and unidentified contracts fail as a matter of law.

30. At the time when Bolier was formed, the LLC Act provided that "[t]he articles of organization or written operating agreement may require that all agreements of the members constituting the operating agreement shall be in writing, in which case the term 'operating agreement' shall not include oral agreements of the members." N.C. Gen. Stat. § 57C-3-05 (2013).[9] Bolier's Articles of Organization contains such a requirement, which states in clear terms that "[t]he Company shall be operated pursuant to a written operating agreement. **No purported oral operating agreement among the members shall be enforceable**." (SAC Ex. 1.) (emphasis added.) The Second Amended Complaint alleges that "Chris Plasman signed the Bolier Operating Agreement provided to him without change," (SAC ¶ 82), and he is therefore bound to its terms. N.C. Gen. Stat. § 57C-3-05 ("A member shall be bound by any operating agreement . . . to which the member has expressly assented."). As a result, the alleged oral and unidentified contracts containing terms contrary to the Operating Agreement cannot sustain Chris Plasman's individual claim for breach of contract.

---

[9] Chapter 57C of the General Statutes was repealed and replaced by Chapter 57D, effective on January 1, 2014. The Court has the discretion to apply either chapter in resolving the present motions. *See* N.C. Gen. Stat. § 57D-11-03(b) (2015) ("Any proceeding commenced before January 1, 2014, may be completed in accordance with the law then in effect.").

ii. <u>Breach of Contract – Derivative Claim</u>

31.     Chris Plasman's derivative claim for breach of contract must fail as well. Similar to his individual claim, Chris Plasman alleges that Decca USA breached specific sections of the Operating Agreement by terminating his employment. (SAC ¶ 364.)  Plaintiff alleges that this conduct violated Bolier's rights under the Operating Agreement and under implied covenants of good faith and fair dealing. (SAC ¶¶ 359, 364.)  As explained above, Plaintiff's allegations cannot give rise to a breach of contract claim on the basis of Chris Plasman's termination from employment because they ignore section 6.1(a), which clearly vests Decca USA as the Majority in Interest with ultimate decision-making authority on many matters, including Bolier's employment decisions. *See Woods-Hopkins Contracting Co. v. N.C. State Ports Auth.*, 284 N.C. 732, 738, 202 S.E.2d 473, 476 (1974) (holding that general contract provisions must yield to specific provision).

32.     Plaintiff likewise cannot premise Boiler's claim on an alleged breach of a covenant of good faith and fair dealing implicit in Bolier's Operating Agreement, because "[a] breach of good faith and fair dealing claim 'cannot be used to contradict the express terms of a contract.'"  *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, 2014 NCBC LEXIS 16, at *42 (N.C. Super. Ct. May 7, 2014) (quoting *Rezapour v. Earthlog Equity Grp., Inc.*, No. 5:12CV105-RLV, 2013 U.S. Dist. LEXIS 92124, at *11 (W.D.N.C. July 1, 2013)).

33.     Chris Plasman's derivative breach of contract claim additionally alleges that Decca USA entered into and breached alleged contracts with Bolier to provide

Contract Services. (SAC ¶¶ 355–361.) Where a complaint alleges (1) the existence of a valid contract and (2) breach of the terms of the contract, it is error to dismiss a breach of contract claim under N.C. R. Civ. P. 12(b)(6). *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 588, 619 S.E.2d 577, 580 (2005). A valid contract requires (1) assent, (2) mutuality of obligation, and (3) definite terms. *Schlieper v. Johnson*, 195 N.C. App. 257, 265, 672 S.E.2d 548, 553 (2009). In alleging the existence of the contracts to provide Contract Services, the Second Amended Complaint only alleges that Decca China and Decca USA "demanded that Bolier receive administrative services," (SAC ¶ 99); "demanded that Bolier receive accounting services," (SAC ¶ 100); and "demanded that Bolier receive legal services," provided by Decca USA, (SAC ¶ 101). The pleadings suggest that Decca USA did in fact provide these services. (SAC ¶ 108.)

34. Those limited allegations are insufficient, however, to state a claim that Decca USA and Bolier had a contract to provide the Contract Services. Plaintiff has not alleged any facts which would support the existence of assent on the part of Bolier, mutuality of obligation, or definite terms with regard to the Contract Services. As such, the Court cannot accept as true the conclusory allegation that valid contracts existed, and the derivative claim for breach of the alleged agreements to provide Contract Services must fail. *See, e.g., Charlotte Motor Speedway*, 230 N.C. App. at 6, 748 S.E.2d at 175 ("An allegation that a valid contract exists between parties is a legal conclusion."); *Guarascio v. New Hanover Health Network, Inc.*, 163 N.C. App. 160, 165, 592 S.E.2d 612, 614 (2004) (affirming

12(b)(6) dismissal of breach of contract claim premised upon conclusory allegation that an employment manual was part of plaintiff's employment contract); *FCX, Inc. v. Bailey*, 14 N.C. App. 149, 151, 187 S.E.2d 381, 382 (1972) (affirming 12(b)(6) dismissal of contract claim premised upon conclusory allegation that third-party plaintiff was a third-party beneficiary to the contract).

35.    For the reasons stated above, Chris Plasman's individual and derivative breach of contract claims each fail to state a claim as a matter of law.

    b.    Breach of Fiduciary Duty and Constructive Fraud

36.    Plaintiff bundles together claims for breach of fiduciary duty and constructive fraud and asserts these claims individually and derivatively.  To state a claim for breach of fiduciary duty, a plaintiff must allege (1) the existence of a fiduciary relationship, (2) a breach of that duty, and (3) that the breach injured plaintiff.  *See Green v. Freeman*, 367 N.C. 136, 749 S.E.2d 262, 268 (2013).  The Court discusses these claims together because "[t]he primary difference between pleading a claim for constructive fraud and one for breach of fiduciary duty is" that constructive fraud requires allegations that the defendant benefitted himself through the breach.  *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004).  Plasman brings both the individual and derivative claims against Tsang, Decca China, Herbst, Decca USA, Tin, and Hudgins.

    i.    Individual Breach of Fiduciary Duty

37.    In Chris Plasman's individual claims, he alleges that these Defendants breached fiduciary duties owed to him by forcing him to accept a 45% membership

interest in Bolier, (SAC ¶¶ 330–33), refusing to later make him a 50% member, (SAC ¶ 339), failing to provide business information "as required by statute, fiduciary duties, and court order," (SAC ¶ 334), allocating business away from Bolier, (SAC ¶ 336, 341, 346), refusing to combine Bolier profits with Decca Hospitality, (SAC ¶ 337), refusing to vote on matters he noticed for vote, (SAC ¶ 342), and terminating Plasman without a member or manager meeting, (SAC ¶ 341).

38. As an initial matter, the Second Amended Complaint fails to allege facts sufficient to show a fiduciary relationship with many of the Defendants identified as liable under these claims. A fiduciary relationship exists when "there has been special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Dalton v. Camp*, 353 N.C. 647, 651–52, 548 S.E.2d 704, 707–08 (2001) (citation omitted). "'Only when one party figuratively holds all the cards — all the financial power or technical information, for example — have North Carolina courts found that the special circumstances of a fiduciary relationship has arisen.'" *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008) (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 348 (4th Cir. 1998)).

39. As a majority member of Bolier, Decca USA owed Chris Plasman a fiduciary duty as a minority member. *Kaplan v. O.K. Techs., LLC*, 196 N.C. App. 469, 473, 675 S.E.2d 133, 137 (2009) (holding that under the LLC act a manager

owes fiduciary duties to the LLC and a controlling owner owes fiduciary duties to minority owners). Otherwise, however, Chris Plasman has not alleged circumstances showing that other Defendants he interacted with exerted sufficient "domination or control" over him to give rise to a fiduciary duty. It appears to the Court that Chris Plasman attempts to lump all of the Defendants other than Decca USA into the fiduciary duty claim on the basis of the following allegation:

> Herbst, Tin, Hudgins, and Tsang are officers and directors of one or more of Decca China, Decca USA, Decca Contract, Decca Hospitality, Decca Home, Decca Classic, and Decca China Plant, and do not distinguish between actions taken by or for specific entities. For most of the allegations herein, each of the forgoing individuals and purported business entities are jointly and severally liable, and the actions and omissions of one or more of the named parties is attributable to one or more of the individuals and business entities because they act as agents and representatives of the other defendants.

(SAC ¶ 23.) Even taking that allegation as true, it is insufficient here in the absence of other compelling factual allegations to show either that Chris Plasman placed special trust or confidence in Tin, Hudgins, Herbst, Tsang, and Decca China, or that they exerted domination and control sufficient to create a fiduciary relationship. *See Dalton*, 353 N.C. at 652, 548 S.E.2d at 708 (stating that domination and control are essential aspects of a fiduciary relationship). Indeed, the Second Amended Complaint alleges that Chris Plasman "was an experienced furniture executive," (SAC ¶ 35), and that he approached Tsang and Herbst about developing the Bolier brand, (SAC ¶ 42).

40. Chris Plasman argues that certain of these Defendants exerted domination and control over him because they promised him that Bolier would be run as a 50/50

partnership and that he would only be a minority member "on paper." That argument, however, fails. As stated above, Bolier's Articles of Organization disclaimed any oral agreement between the members, and Chris Plasman admits that he voluntarily entered into the written Operating Agreement as a 45% owner. Plaintiff's voluntary actions in entering into this relationship defeat his contention that the Defendants exerted domination and control over him. *See, e.g., Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 368, 760 S.E.2d 263, 266 (2014) (stating that arm's length transactions do not typically give rise to fiduciary duties). Therefore, Chris Plasman has failed to allege that any Defendant other than Decca USA owes him a fiduciary duty.

41.    Many of the alleged breaches of fiduciary duty by Decca USA depend on Chris Plasman's contention that he was promised a 50% ownership interest in Bolier, that he was entitled to lifetime employment with Bolier, and that under the Operating Agreement he enjoys the right to manage Bolier's business coequal with Decca USA. Plaintiff's argues that he was promised a 50% ownership in Bolier by Tsang and Herbst prior to the creation of Decca USA. (SAC ¶ 63.) Because the Court has concluded that Tsang and Herbst did not owe Plaintiff fiduciary duties, however, no claim for breach can lie on those allegations. Decca USA's authority to act unilaterally on behalf of Bolier and to terminate Plaintiff is set forth in Bolier's Operating Agreement, as explained by the Court in dismissing Plaintiff's breach of contract claims. Because Plaintiff's allegations and the exhibits attached to the Complaint show that Decca USA acted pursuant to the Operating Agreement,

Plaintiff has failed to allege any conduct on the part of Decca USA in breach of a fiduciary duty owed to Plaintiff.

### ii. Derivative Breach of Fiduciary Duty

42. Much of Chris Plasman's derivative breach of fiduciary duty claim is repetitive of allegations in his individual breach of fiduciary duty claim. In addition to those allegations, Plaintiff alleges that Defendants breached fiduciary duties owed to Bolier by "making numerous unilateral decisions designed to reduce Bolier's business," (SAC ¶ 346), terminating the Plasmans' access to Bolier's computer software, (SAC ¶ 347), refusing to provide Contract Services and return records, (SAC ¶ 348), failing to introduce new Bolier designs, (SAC ¶ 349), and "causing Decca Defendants" to compete with Bolier, (SAC ¶ 352).

43. It is true that Decca USA, as a manager and majority member, owes fiduciary duties to Bolier. *Kaplan*, 196 N.C. App. at 473, 675 S.E.2d at 137. Nevertheless, Chris Plasman's specific allegations regarding Decca USA boil down essentially to allegations that Decca USA made management decisions for Bolier without obtaining his consent. Yet, as discussed above, Chris Plasman voluntarily entered into an Operating Agreement which gave the Majority in Interest (i.e., Decca USA) the ultimate authority to act, including without his consent.

44. Furthermore, even if the contract documents supported Chris Plasman's allegations, North Carolina law is clear that parties to a contract "generally owe no special duty to one another beyond the terms of the contract[.]" *Branch Banking & Trust Co. v. Thompson*, 107 N.C. App. 53, 61, 418 S.E.2d 694, 699 (1992) (holding

that parties to a contract do not thereby become each other's fiduciaries). Here, Chris Plasman has essentially alleged that the acts he contends to be contractual breaches were *de facto* breaches of fiduciary duties. Without more, such allegations are insufficient to demonstrate that Defendants' actions breached fiduciary duties to Bolier.

45. Plaintiff fully premises his constructive fraud claims on his breach of fiduciary duty claims. (Pl.'s Mem. Opp. Mot. Dismiss 6.) Because the breach of fiduciary duty claims fail, Plaintiff's constructive fraud claims, both individually and derivatively, must also fail. *See, e.g.*, *Levin v. Jacobson*, 2016 NCBC LEXIS 66, at *12 (N.C. Super. Ct. Aug. 25, 2016) (dismissing constructive fraud claim when the breach of fiduciary duty claim on which it relied failed).

c. <u>Conspiracy to Defraud and Fraud; Fraud and Obtaining Property Under False Pretenses</u>

46. The Second Amended Complaint asserts several combined fraud claims: "Conspiracy to Defraud and Fraud," which is brought derivatively, and "Fraud and Obtaining Property Under False Pretenses," which is brought both derivatively and directly.

47. To state a claim for fraud, a plaintiff must show: a (1) false representation or concealment of a material fact; that is (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) does deceive; and (5) injures the complaining party. *Ragsdale v. Kennedy*, 268 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). The circumstances constituting fraud must be pleaded with particularity, N.C. R. Civ. P.

9(b), and these circumstances include the "time, place, and content of the fraudulent representation, identity of the person making the misrepresentation and what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981).

48. The Second Amended Complaint alleges that various Defendants committed fraud by failing to pay Bolier, (SAC ¶ 418–19), withholding financial information from Bolier and Chris Plasman, (SAC ¶ 421–23), and excluding Chris Plasman from the Bolier premises and financial accounts after his termination, (SAC ¶¶ 427–29, 432–35). With respect to allegations relating to the failure to pay Bolier and the withholding of information, Plaintiff fails to allege any detail about the allegedly fraudulent acts or statements, including their time and place, sufficient to meet the pleading standard under Rule 9(b).

49. As for the allegations that Defendants committed fraud in excluding Chris Plasman from Bolier's presence and financial accounts, Plaintiff alleges that Defendants made misrepresentations about their own authority to third parties, including the police and the bank, and that those third parties relied on the purported misrepresentations in barring Chris Plasman from accessing Bolier's premises or accounts. As pleaded, these allegations attempt to premise a fraud claim on actions directed towards and relied upon by non-parties.

50. "A pleading setting up fraud must allege the facts relied upon to constitute fraud, and that the alleged false representation was made with intent to deceive *plaintiff*." *Calloway v. Wyatt*, 246 N.C. 129, 133, 97 S.E.2d 881, 884 (1957)

(emphasis added). "Where the facts are insufficient as a matter of law to constitute reasonable reliance *on the part of the complaining party*, the complaint is properly dismissed under Rule 12(b)(6)." *Hudson-Cole Dev. Corp. v. Beemer*, 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999) (emphasis added). Here, the Second Amended Complaint fails to allege that Chris Plasman or Bolier relied on alleged misrepresentations intended to deceive either of them. *See also RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 744, 600 S.E.2d 492, 498 (2004) ("*Plaintiff's* reliance on any misrepresentations must be reasonable.") (emphasis added). Therefore, the Second Amended Complaint fails to state a claim for fraud on that basis.

51. Plaintiff's "conspiracy to defraud" claim must also fail. "It is well established that 'there is not a separate civil action for civil conspiracy in North Carolina.'" *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 747, 641 S.E.2d 695, 698 (2007) (quoting *Dove v. Harvey*, 168 N.C. App. 687, 690, 608 S.E.2d 798, 800 (2005)). In a civil conspiracy, "'recovery must be on the basis of sufficiently alleged wrongful overt acts,'" and the conspiracy charge is simply a mechanism for associating the defendants and broadening the admissible evidence. *Dove*, 168 N.C. App. at 690, 608 S.E.2d at 800 (quoting *Fox v. Wilson*, 85 N.C. App. 292, 301, 354 S.E.2d 737, 743 (1987)). "The existence of a conspiracy requires proof of an agreement between two or more persons." *Henderson v. LeBauer*, 101 N.C. App. 255, 261, 399 S.E.2d 142, 145 (1991). Here, the underlying fraud claim has failed, and Plaintiff asserts only in conclusory fashion that various Defendants at

unspecified times conspired to commit fraud or conspired to withhold information. (SAC ¶¶ 418, 420, 421.) As such, Plaintiff's purported claim for conspiracy to defraud must also fail.

52. Together with his fraud claim, Plaintiff asserts a claim for obtaining property under false pretenses. In support of that claim, Plaintiff alleges that Tin's and Hudgins's actions in excluding Chris Plasman from Bolier's premises and cutting off his access to Bolier's financial accounts amounted to "felonious violations of N.C. Gen. Stat. § 14-100." (SAC ¶ 436.) The statutory offense is defined as "(1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another." *State v. Cronin*, 299 N.C. 229, 242, 262 S.E.2d 277, 286 (1980).[10] Plaintiff has alleged that statements made to exclude Chris Plasman from Bolier's premises and bank accounts following the termination of his employment are the underlying false representations. However, as the Court has stated, the Operating Agreement gave Decca USA authority to terminate Chris Plasman as an employee of Bolier. Therefore, the Second Amended Complaint fails to allege any requisite false misrepresentations

---

[10] While N.C. Gen. Stat. § 14-100 is a criminal statute, a person who obtains property by false pretenses in violation of that statute is liable for civil damages to the owner of the property. N.C. Gen. Stat. § 1-538.2(a).

which were intended to deceive, and Plaintiff's claim for obtaining property by false pretenses must be dismissed.[11]

d. Self-Dealing and Misappropriation of Corporate Opportunities

53. The Second Amended Complaint asserts together a derivative and direct claim for "self-dealing and misappropriation of corporate opportunities." Plaintiff alleges that Decca USA and Decca China engaged in self-dealing by employing individuals, including Herbst, Tin, and Hudgins, who also worked for other Decca entities. (SAC ¶¶ 382–85.) Plaintiff also appears to allege that the provision of Contract Services by entities in which Decca USA had an interest amounts to self-dealing. Plaintiff contends that Decca USA and Decca China misappropriated corporate opportunities by operating Decca-affiliated entities in furniture markets in which Bolier could have participated or was participating. (SAC ¶¶ 380–81, 386–89.)

54. Corporate directors breach the fiduciary duties owed to their corporations when they engage in self-dealing and conflict of interest transactions. *Lecann v. Cobham*, 2012 NCBC LEXIS 58, at *18 (N.C. Super. Ct. Nov. 7, 2012). Plaintiff's response brief clarifies that it alleges Defendants owed a duty not to engage in conflict of interest transactions akin to that owed by corporate directors under N.C. Gen. Stat. § 55-8-31. (Pl.'s Mem. Opp. Mot. Dismiss 19–20.) The fiduciary duties owed by corporate directors, however, are not identical to the fiduciary duties owed by an LLC manager.

---

[11] Section 1-538.2(c) sets forth specific demand requirements that the Second Amended Complaint does not allege have been satisfied, providing a separate basis for dismissal of Plaintiff's claim.

The [LLC] Act contains numerous "default" provisions or rules that govern an LLC only in the absence of an explicitly different arrangement in the LLC's articles of organization or written operating agreement. Because these default provisions can be changed in virtually any way the parties wish, an LLC is primarily a creature of contract.

*Stainless Valve Co. v. Safefresh Techs., LLC*, 231 N.C. App. 286, 291, 753 S.E.2d 331, 335 (2013) (quoting Russell M. Robinson, II, Robinson on North Carolina Corporation Law § 34.01 (7th ed. 2012). Indeed, "the provisions of the [LLC Act] and common law will apply only to the extent contrary or inconsistent provisions are not made in, or not otherwise supplanted, varied, disclaimed, or nullified by, the operating agreement." N.C. Gen. Stat. § 57D-2-30(a). An LLC manager's duty of loyalty to act in the best interest of the LLC is specifically "subject to the operating agreement." N.C. Gen. Stat. § 57D-3-21(b)(iii).

55. Here, the Operating Agreement allowed Bolier's managers to employ individuals and entities despite the potential for conflicts of interest. Although the Second Amended Complaint alleges that the provision of the Contract Services by Decca-affiliated entities amounts to self-dealing by Decca USA, the Operating Agreement specifically allowed Bolier's members:

to employ or retain from time to time, on such terms and for such compensation as agreed to by a Majority in Interest, such persons, firms, or corporations, including without limitation attorneys, accountants, bookkeepers, [and other professionals] who may also provide such services to the Members and persons, firms or corporations in which any Member may have an interest.

(Operating Agreement § 6.1(c)(ii).) The last clause of that provision clearly contemplates that Bolier's members may have an interest in the individuals or entities providing Contract Services to Bolier.

56. The Second Amended Complaint also alleges that Decca USA engaged in self-dealing by employing individuals to work for Bolier who also worked for other Decca-affiliated entities. The Operating Agreement, however, allows for that conduct as well: "The Members may at any time employ any other Persons, including Persons employed by, affiliated with or related to them or any Member, to perform services for the Company and its business." (Operating Agreement § 6.6.) Chris Plasman therefore entered into an Operating Agreement, which expressly permitted Decca USA to contract with and employ affiliated individuals and entities. He cannot now allege that such conduct to which he voluntarily consented in contract amounts to self-dealing, and his claim therefore must fail. *See, e.g.*, *HCW Ret. & Fin. Servs., LLC v. HCW Emp. Benefit Servs., LLC*, 2015 NCBC LEXIS 73, at *46–47 (N.C. Super. Ct. July 14, 2015) (holding that an LLC member could not claim that he was a minority member owed a fiduciary duty where he voluntarily entered into an Operating Agreement indicating otherwise).

57. Misappropriation of corporate opportunity "is a species of the duty of a fiduciary to act with undivided loyalty; . . . in general, a corporate officer or director is under a fiduciary obligation not to divert corporate business opportunity for his own personal gain." *Meiselman v. Meiselman*, 309 N.C. 279, 307, 307 S.E.2d 551, 568 (1983) (quotation omitted). Misappropriation of corporate opportunities is

logically a derivative claim, but not an individual claim, because the injury is to the corporation, not to an individual shareholder. *Id.* at 307, 307 S.E.2d at 567 (identifying as an essential element that defendant "breached a fiduciary duty *owed to the corporate defendants* not to usurp a corporate opportunity"). The Court concludes that these principles are equally applicable in the limited liability company context, and, therefore, Plaintiff's individual claim for misappropriation of corporate opportunity must fail as a matter of law.

58. Moreover, the Second Amended Complaint alleges that Defendants misappropriated corporate opportunities by making various management decisions, selling Bolier products through other Decca-affiliated entities, and allowing other Decca-affiliated entities to sell furniture in markets where Bolier operated. (SAC ¶ 380–401.) Plaintiff's allegations that these actions breached a fiduciary duty owed to Bolier are in conflict with Plaintiff's admission that he caused Bolier to enter into licensing agreements with Decca China and its affiliates, by which those entities agreed to pay Bolier royalties for sales of its products in certain markets. (SAC ¶ 135–37.) Accordingly, the Second Amended Complaint fails to state a derivative claim for misappropriation of corporate opportunities, and that claim must be dismissed as well.

e. <u>Tortious Interference</u>

59. Chris Plasman brings a claim for "tortious interference" derivatively on behalf of Bolier. The Second Amended Complaint does not identify whether the claim is for tortious interference with contract or for tortious interference with

prospective economic advantage, and so the Court evaluates the claim under both causes of action.

60.    The elements for tortious interference with contract are:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*Beck v. City of Durham*, 154 N.C. App. 221, 232, 573 S.E.2d 183, 191 (2002) (quotation omitted).  Tortious interference with prospective economic advantage is a similar claim in which a plaintiff "must allege facts showing that the defendants acted without justification in 'inducing a third party to refrain from entering into a contract with them which contract would have ensued but for the interference." *Walker v. Sloan*, 137 N.C. App. 387, 393, 592 S.E.2d 236, 242 (2000) (citation omitted).   In support of this claim, Chris Plasman alleges that Decca China, Decca USA, Tin, and Herbst tortiously interfered with Bolier's contracts or prospective contracts by diverting containers of furniture meant for Bolier, (SAC ¶ 441), refusing to process payroll or authorize Bolier to process payroll, (SAC ¶ 442), and refusing to return furniture or deposits belonging to Bolier customers, (SAC ¶ 445).[12]

---

[12]  The caption states that this claim is also brought against Decca Contract and Decca Hospitality, yet neither party is mentioned in the paragraphs within that section.  The substance of a complaint controls over its internal captions, and after consideration of the Second Amended Complaint as a whole, the Court concludes that Plaintiff has failed to state a claim for tortious interference against those parties.  *See Taylor v. Ashburn*, 112 N.C. App. 604, 607, 436 S.E.2d 276, 279 (1993) (holding that a complaint's caption is not determinative of the capacity in which a defendant is actually being sued).

61. Claims for tortious interference are justified by the "overwhelming authority" allowing for recovery against "an *outsider* who knowingly, intentionally, and unjustifiably induces one party to a contract to breach it to the damage of the other party." *Childress v. Abeles*, 240 N.C. 667, 674, 84 S.E.2d 176, 181 (1954) (emphasis added) (citations omitted). As pleaded, Plaintiff alleges that the named Defendants have tortiously interfered with Bolier's contracts and prospective contracts by taking allegedly unlawful acts on behalf of Bolier or by causing Bolier not to perform its contractual obligations to third-parties. "A party to a contract, including the party's managing agent, cannot be liable for wrongful interference of the contract." *Palles v. Hatteras Inv. Partners LLC*, 2009 NCBC LEXIS 37, at *15 (citing *Wagoner v. Elkin City Sch. Bd. of Educ.*, 113 N.C. App. 579, 587, 440 S.E.2d 119, 124 (1994)). Because Decca USA is the managing member of Bolier, it can be considered a party to Bolier's contracts and cannot be liable for tortious interference with Bolier's contracts or its prospective economic advantage.

62. Decca China, Tin, and Herbst, on the other hand, can be considered "non-outsiders" to Bolier's contracts. "A non-outsider is one who, though not a party to the terminated contract, had a legitimate business interest of his own in the subject matter." *Smith v. Ford Motor Co.*, 289 N.C. 71, 87, 221 S.E.2d 282, 292 (1976) (holding that Ford Motor Co. was a non-outside who had a legitimate business interest in the success of a Ford dealer). A non-outsider enjoys qualified immunity from liability on a tortious interference claim. *Combs v. City Elec. Supply Co.*, 203 N.C. App. 75, 84, 690 S.E.2d 719, 725 (2010). Nevertheless, a non-outsider may be

liable for tortious interference if the non-outsider acted with "legal malice." *Varner v. Bryan*, 113 N.C. App. 697, 702, 440 S.E.2d 295, 298 (1994). "A person acts with legal malice if he does a wrongful act or exceeds his legal right or authority in order to prevent the continuation of the contract between the parties." *Id.*

63. Herbst, Tin, and Decca China, as officers, owners, and affiliates of Decca USA, have a legitimate business interest in the success of Bolier and are therefore non-outsiders to its contracts. Plaintiff advances conclusory allegations that these Defendants' actions were "maliciously intended" to interfere with Bolier's contracts. (SAC ¶¶ 441–43.) However, "[g]eneral allegations of malice are insufficient as a matter of pleading." *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 605, 646 S.E.2d 826, 833 (2007) (citing *Spartan Equipment Co. v. Air Placement Equipment Co.*, 263 N.C. 549, 559, 140 S.E.2d 3, 11 (1965)). The Second Amended Complaint makes no further allegations that these Defendants acted with legal malice in allegedly interfering with Bolier's contracts and prospective contracts, so Plaintiff's claim must therefore fail. *See also Stec v. Fuzion Inv. Capital, LLC*, 2012 NCBC LEXIS 24, at *23–24 (N.C. Super. Ct. Apr. 30, 2012) (dismissing tortious interference claim for failure to state a claim where the complaint only advanced conclusory allegations that non-outsiders acted maliciously).

f. Intellectual Property Claims

64. Plaintiff asserts a derivative and an individual cause of action for "trademark, trade dress, and misappropriation of intellectual property." Plaintiff's brief in response to the Motion to Dismiss clarifies that the rights Plaintiff seeks to

protect are primarily Chris Plasman's "common law right to use Bolier in commerce relating to furniture." (Pl.'s Br. Opp. Mot. Dismiss SAC 13.)

65. Chris Plasman advances conclusory statements that certain Defendants "are unlawfully and without Bolier's permission using Bolier's designs, trademarks and trade names in violation of agreement with Bolier," "conspiring to misappropriate Bolier's intellectual property," and "infringing Bolier's common law intellectual property rights." (SAC ¶¶ 414–15.) In the absence of "specific, supportive, factual allegations, the [C]ourt need not accept as true general conclusory allegations of the elements of a cause of action for purposes of a motion to dismiss." *Global Promotions Grp., Inc. v. Danas, Inc.*, 2012 NCBC LEXIS 41, at *12 (N.C. Super. Ct. June 22, 2012) (citing *Manning v. Manning*, 20 N.C. App. 149, 154, 201 S.E.2d 46, 50 (1973).

66. Despite these general allegations, Plasman acknowledges in the Second Amended Complaint that he licensed the use of Bolier's name and designs to Decca China and its related entities. (SAC ¶¶ 135–38.) Furthermore, Bolier's Operating Agreement makes clear that Bolier has an interest in the name "Bolier" until the company "decide[s] to cease operations, wind up its affairs, and seek to be dissolved," at which point it will transfer those rights to Chris Plasman. (SAC, Ex. 10, hereinafter "Operating Agreement" § 2.2.) Although Chris Plasman alleges that he sought to cause Bolier to unilaterally transfer rights in the name "Bolier" back to himself after his termination, (SAC ¶ 213; Ex. 30), the Second Amended Complaint does not aver that Bolier has engaged in any of the activities set forth in section 2.2

of the Operating Agreement requiring transfer of the name back to Plaintiff. In particular, a decision to cease operations and wind up Bolier required the written consent of all of Bolier's members, consent Plaintiff never alleges was given. (Operating Agreement § 8.1(a)(ii).)

67. Therefore, the Second Amended Complaint discloses specific facts indicating that the Decca Defendants acquired and continue to possess lawful interests in Bolier's intellectual property. Those specific facts necessarily defeat Plaintiff's conclusory allegations of misappropriation and unlawful use, and so Plaintiff's claim must be dismissed. *See Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985) (holding that dismissal is proper under 12(b)(6) "when some fact disclosed in the complaint necessarily defeats the plaintiff's claim").

g. Conversion

68. Plaintiff asserts a derivative claim for conversion alleging that Decca USA, Tin, and Hudgins converted furniture intended for Bolier's customers "to control by Decca USA," (SAC ¶ 452), converted funds including customer payments "to exclusive control by Decca USA," (SAC ¶ 455), and converted the Bolier website owned by Chris Plasman, (SAC ¶ 458). To state a claim for conversion, a plaintiff must allege (1) ownership in the plaintiff and (2) wrongful possession or conversion by the defendant. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (citation omitted).

69. Under the Operating Agreement, Decca USA's status as the Majority in Interest allows it to exercise control over Bolier's products and funds. *(See*

*generally*, Operating Agreement § 6.1(c).)  Plaintiff's allegations that Decca USA exerted "control" over those items fails to state that Decca USA has deprived Bolier of its ownership rights in the property.  *Variety Wholesalers*, 365 N.C. at 530, 723 S.E.2d at 751 ("The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner.").  Without more, Plaintiff has failed to allege that Decca USA wrongfully possessed or converted Bolier property to its own use, and the conversion claim must fail on that basis.

70.    With regard to the website, Plaintiff alleges that "at all times prior to January 14, 2013, the website www.bolierco.com was registered and owned by Plasman in his personal capacity." (SAC ¶ 219.)  The Second Amended Complaint further states that Decca China "high-jacked the www.bolierco.com website owned by Plasman" and committed conversion in doing so.  (SAC ¶¶ 250, 458.)  The Second Amended Complaint only states the conversion claim, derivatively, however.  Because the website was alleged to be owned by Plasman, Bolier cannot state a claim that any of the Decca Defendants deprived Bolier of ownership over the website.  Plaintiff's derivative claim for conversion must therefore fail with respect to the www.bolierco.com website.

h. Defamation

71.    Chris Plasman brings a direct claim for defamation against Decca China, Tsang, Herbst, Decca USA, Tin, and Hudgins.[13]   Chris Plasman alleges that

_____

[13]   The claim's heading identifies all of these defendants as liable for defamation, but Plaintiff fails to attribute any defamatory statements to Decca China.   The allegedly slanderous statements were made by Tin and Hudgins.  (SAC ¶ 467.)  The letter to Bolier customers was signed by Tin, as COO of Decca USA, and was allegedly "approved" by

Defendants made slanderous statements to Bolier employees in a company meeting and made libelous statements in separate letters to Bolier customers and to the Bank of North Carolina following Decca USA's termination of the Plasmans' employment. In the meeting with Bolier employees, Plaintiff contends that Tin made statements that the Plasmans had misused Bolier funds and that Chris Plasman claimed to own 100% of Bolier. (SAC ¶¶ 462–65.) In the letter to Bolier customers, Tin, as COO of Decca USA, apologized for recent customer service issues and stated that the Plasmans had improperly held themselves out as Bolier employees since their termination on October 19, 2012. (SAC Ex. 34.)

72. To state a claim for defamation, a plaintiff must allege "that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Tyson v. L'eggs Prods., Inc.*, 84 N.C. App. 1, 10–11, 351 S.E.2d 834, 840 (1987). Truth is a defense to a defamation claim. *Holleman v. Aiken*, 193 N.C. App. 484, 496, 668 S.E.2d 579, 587 (2008). Defamation can take the form of libel, which is written, or slander, which is oral. *Tallent v. Blake*, 57 N.C. App. 249, 251, 291 S.E.2d 336, 338 (1982).

73. North Carolina law recognizes three classes of libel: "(1) publications obviously defamatory which are called libel *per se*; (2) publications susceptible of two interpretations one of which is defamatory and the other not; and (3) publications not obviously defamatory but when considered with innuendo,

Tsang and Herbst. (SAC ¶ 238.) The letter to Bank of North Carolina was written by Decca USA's legal counsel on their behalf. (SAC Ex. 51.)

colloquium, and explanatory circumstances become libelous, which are termed libels *per quod.*" *Arnold v. Sharpe*, 296 N.C. 533, 537, 251 S.E.2d 452, 455 (1979). North Carolina law also recognizes two classes of slander: (i) slander *per se* and (ii) slander *per quod.* *Donovan v. Fiumara*, 114 N.C. App. 524, 527, 442 S.E.2d 572, 574 (1994).

74. With regard to the statements in question, the Plasmans contend that Defendants are liable on both a *per se* and a *per quod* basis. Libel *per se* occurs when the publication "considered alone without explanatory circumstances: (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace." *Nucor Corp. v. Prudential Equity Grp., LLC*, 189 N.C. App. 731, 736, 659 S.E.2d 483, 486 (2008) (quoting *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29, 568 S.E.2d 893, 898 (2002)). Similarly, slander *per se* occurs when false remarks, which in and of themselves, amount to "(1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease." *Phillips v. Winston-Salem/Forsyth Cnty. Bd. of Educ.*, 117 N.C. App. 274, 277, 450 S.E.2d 753, 756 (1994).

75. Most of the allegedly defamatory statements here are not actionable because the Second Amended Complaint and its attached exhibits reveal them to be true. In the meeting with Bolier employees and in the letter to Bank of North

Carolina, Defendants stated the Plasmans had wrongfully taken and used Bolier funds. In a response letter sent by Plaintiff's counsel to the Bank of North Carolina, Plaintiff's counsel acknowledges that "Chris Plasman and Barrett Plasman on behalf of Bolier & Company, LLC opened the bank account with Bank of North Carolina on October 24, 2012 to facilitate Bolier & Company, LLC's continued operation." (SAC Ex. 52.)

76. While Plaintiff disputes that Decca USA had the authority to terminate the Plasmans on October 19, 2012, the Court has already held that the Operating Agreement clearly entitled Decca USA as the Majority in Interest to terminate the Plasmans' employment. Chris Plasman alleges that even if he was terminated when he opened a bank account in Bolier's name with Bolier's funds, he was entitled to do so under the Operating Agreement, which provides that Bolier's bank accounts "shall be maintained in the bank approved by the Managers." (Operating Agreement § 7.10.) That provision cannot fairly be read, however, to allow a minority member-manager to unilaterally open a bank account in Bolier's name with Bolier's funds, particularly in light of the requirement that "all decisions or actions of the Company, the Company's [managers] or the Members" require the approval of the Majority in Interest. (Operating Agreement § 6.1(a).) Therefore, the Second Amended Complaint asserts facts defeating Plaintiff's allegations that Defendants made false statements that the Plasmans had misused Bolier funds.

77. The statements made in the letter to Bolier customers are likewise not defamatory because the Second Amended Complaint reveals their truth. The letter

to Bolier customers states that the Plasmans were terminated on October 19, 2012 and have misrepresented themselves as employees and officers of Bolier since that time. Those statements are only false under the Plasmans' theory that Decca USA lacked the authority to terminate them. Because the Court has already determined that Decca USA terminated the Plasmans on October 19, 2012 pursuant to its rights as the Majority in Interest, the statements in the letter to Bolier customers are not false and therefore cannot support a claim for libel.

78. Finally, the statement made to Bolier employees that Chris Plasman claimed to own 100% of Bolier fails to state a claim as slander *per se* or slander *per quod*. That statement is not slanderous *per se* because it does not specifically impeach Chris Plasman in his trade or profession. Words are slanderous *per se* when they are "susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt, or ridicule, or cause him to be shunned and avoided." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 30–31, 568 S.E.2d 893, 898–99 (2002).

79. With that high bar in mind, "North Carolina cases have held consistently that alleged false statements made by [a former employer], calling [a former employee] 'dishonest' or charging that plaintiff was untruthful and an unreliable employee, are not actionable per se." *Pierce v. Atl. Grp., Inc.*, 219 N.C. App. 19, 23, 724 S.E.2d 568, 572 (2012). On its face, a statement that Chris Plasman claimed to own 100% of Bolier when he in fact did not fails to meet the high bar for slander *per*

*se*; such a statement only attacks his professional reputation to the extent it charges him with being dishonest, which is not actionable on a *per se* theory under *Pierce*.

80. Slander *per quod*, on the other hand, occurs when a statement that is not defamatory on its face nevertheless reveals itself as harmful "in consequence of extrinsic, explanatory facts showing its injurious effect." *Donovan*, 114 N.C. App. at 527, 442, S.E.2d at 574. To succeed on a *per quod* basis, "the injurious character of the words and some special damage must be pleaded and proved." *Beane v. Weiman Co., Inc.*, 5 N.C. App. 276, 277, 168 S.E.2d 236, 237 (1969). A plaintiff must allege special damages "so as to fairly inform the defendant of the scope of plaintiff's demand." *Nguyen*, 200 N.C. App. at 393, 684 S.E.2d at 475.

81. Chris Plasman does not allege any extrinsic or explanatory circumstances causing the allegedly defamatory statement to be injurious. Indeed, Chris Plasman only states that this statement "is false and intended to defame, and impeach Chris [Plasman] in his profession." (SAC ¶ 463.) Nor does Chris Plasman allege special damages, advancing only a general claim that he has been damaged in excess of $20,000. (SAC ¶ 473.) *See, e.g., Skinner v. Reynolds*, 764 S.E.2d 652, 657 (N.C. Ct. App. 2014) (dismissing libel per quod claim because conclusory allegation of "lost wages" and "expenses" failed to state "facts indicating the circumstances of the alleged special damages or the amount claimed"); *Pierce*, 219 N.C. App. at 35, 724 S.E.2d at 579 (holding that a general allegation that defamatory statements

"damaged . . . [Plaintiff's] economic circumstances" was insufficient to allege special damages).

82.    Because Plaintiff has not identified any statements or special damages that can support his defamation claim, Plaintiff's claim must be dismissed.

      i.   <u>Misappropriation of Trade Secrets</u>

83.    To state a claim for misappropriation of trade secrets, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *VisionAir, Inc. v. James*, 167 N.C. App. 504, 510–11, 606 S.E.2d 359, 364 (2004) (citation omitted). "[A] complaint that makes general allegations in sweeping and conclusory statements, without specifically identifying the trade secrets allegedly misappropriated, is insufficient to state a claim for misappropriation of trade secrets." *Washburn v. Yadkin Valley Bank & Trust Co.*, 190 N.C. App. 315, 327, 660 S.E.2d 577, 585–86 (2008).

84.    North Carolina's Trade Secret Protection Act defines a trade secret as:

> business or technical information . . . that: (a) Derives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development or reverse engineering by persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.C. Gen. Stat. § 66-152(3). Defendants argue, and the Court agrees, that Plaintiff has not identified its trade secrets with sufficient particularity. Plaintiff identifies as its trade secrets "Bolier's business records kept at 2009 Fulton Place," (SAC ¶

475), and its "confidential pricing information[.]" (SAC ¶ 478.) These brief allegations squarely fall within the bounds of allegations that our courts have regularly deemed too "sweeping and conclusory" to state a claim for misappropriation of trade secrets. *See Washburn*, 190 N.C. App. at 327, 660 S.E.2d at 586 (holding that allegations of "knowledge of [party's] business methods; clients, their specific requirements and needs; and other confidential information pertaining to [party's] business" failed to sufficiently identify a trade secret); *Aecom Tech. Corp. v. Keating*, 2012 NCBC LEXIS 9, at *8 (N.C. Super. Ct. Feb. 6, 2012) (holding that broad allegations of customer lists, customer contact information, pricing information, and product information failed to identify trade secrets); *Akzo Nobel Coatings, Inc. v. Rogers*, 2011 NCBC LEXIS 42, at *68–69 (N.C. Super. Ct. Nov. 3, 2011) (holding allegation of "proprietary formulas, methodologies, customer and pricing data and other confidential information" was too broad and vague to constitute a trade secret). The Court therefore concludes that Plaintiff has failed to sufficiently allege or identify its trade secrets, so the claim for misappropriation of trade secrets fails as a matter of law.[14]

### j. Unfair and Deceptive Trade Practices

85. Chris Plasman asserts an individual and a derivative claim for violation of the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1. Chris Plasman brings this claim against Decca China, Decca USA, Decca Contract, Decca

---

[14] In its response brief, Plaintiff did not challenge Defendants' arguments concerning dismissal of his misappropriation of trade secrets claim. As an additional basis for dismissal, therefore, the Court treats Defendants' motion as uncontested with regard to this claim.

Hospitality, Decca Home, Tsang, Herbst, Tin, and Hudgins.[15] Like many of his claims, it fails to distinguish between harm allegedly done directly to Plasman and harm allegedly done to Bolier. To successfully state a claim for unfair and deceptive trade practices, a plaintiff must allege "(1) an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the plaintiff or to his business." *McLamb v. T.P. Inc.*, 173 N.C. App. 586, 593, 619 S.E.2d 577, 582 (2005) (citing N.C. Gen. Stat. § 75-1.1). In construing the phrase "in or affecting commerce," our Supreme Court has held that "the General Assembly did not intend for the [Unfair and Deceptive Trade Practices] Act to intrude in the internal operations of a single market participant." *White v. Thompson*, 364 N.C. 47, 53, 691 S.E.2d 676, 680 (2010).

86. Here, Plaintiff's allegations cover much of the same conduct of which Plaintiff complains in his breach of fiduciary duty and misappropriation of corporate opportunities claims. Chris Plasman alleges that the operation of other Decca entities in competing markets is an unfair or deceptive trade practice. (SAC ¶ 488.) Chris Plasman additionally alleges that the provision of Contract Services to Bolier and the sending of an allegedly defamatory letter to Bolier customers rise to the level of unfair and deceptive trade practices.

87. As an initial matter, the Court dismisses the defamation claim in full as explained above, and Plaintiff has not alleged facts showing that sending the allegedly defamatory letter to Bolier customers is otherwise unfair or deceptive.

---

[15] Here, again, the claim's heading identifies Tin and Hudgins as liable defendants, but the supporting allegations fail to mention conduct by those individuals.

Therefore, Plaintiff's Chapter 75 claim must fail to the extent it is premised on Plaintiff's defamation claim.

88. Likewise, the provision of Contract Services to Bolier—whether or not pursuant to a binding contract—does not, as pleaded, state a claim for violation of section 75-1.1. The Second Amended Complaint reveals that Plaintiff's primary grievance with the provision of Contract Services is that he believed those services could be performed by others for less money. (SAC ¶¶ 109, 111, 140, 302.) In other words, Plaintiff complains that Decca USA has engaged in unfair or deceptive conduct by failing to negotiate for more favorable pricing terms on behalf of Bolier. As pleaded, Plaintiff has alleged that any unfair or deceptive conduct on the part of Decca USA with regard to the Contract Services was contained solely within Bolier.

89. In *White v. Thompson*, the Supreme Court held that unfair or deceptive conduct was not "in or affecting commerce" when it occurred only among the partners of a single business. 364 N.C. at 53, 691 S.E.2d at 680. In reaching its conclusion, the Court noted that the unfair or deceptive conduct was the same conduct alleged to be a breach of fiduciary duty to the partnership, and that the plaintiff had only acted unfairly or deceptively towards his partners. *Id.* Here, Plaintiff alleges that the provision of the Contract Services, which it also alleges was an act of self-dealing in breach of Decca USA's fiduciary duties to Bolier, was unfair and deceptive conduct directed towards Bolier. Plaintiff's allegations that the Contract Services were not a good business deal for Bolier describe "the internal

operations of a single market participant," and, as such, cannot be actionable under Chapter 75. *Id.*

90.  The Court acknowledges that the allegations regarding the provision of the Contract Services bear some similarity to the facts in *Sara Lee Corp. v. Carter*, 351 N.C. 27, 32–33, 519 S.E.2d 308, 311–12 (1999). In *Sara Lee*, the Supreme Court held that N.C. Gen. Stat. § 75-1.1 would apply to the defendant's self-dealing activities wherein he sold goods and services to his employer from companies owned by him. *Id.* The Court's decision in *Sara Lee*, however, relied on the trial court's award of damages on the claim of self-dealing and its finding that the defendant had not informed the plaintiff-employer of his self-interest. *Id.* In this case, however, this Court has already dismissed Plaintiff's self-dealing claim. In light of this Court's conclusion that the provision of the Contract Services was permissible under the Operating Agreement, and that the Operating Agreement disclosed that such services could be provided by an interested party, the allegations regarding the provision of Contract Services does not, as pleaded here, allege unfair or deceptive conduct.

91.  Regarding the allegations of unfair market competition, the Second Amended Complaint reveals that these actions cannot fairly be alleged as unfair or deceptive. A practice is unfair when "it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Pinehurst, Inc. v. O'Leary Bros. Realty, Inc.*, 79 N.C. App. 51, 59–60, 338 S.E.2d 918, 923 (1986). Here, Plaintiff has alleged simply that the

act of selling competing furniture in markets in which Bolier operates rises to the level of unfairness. Without more, the mere participation of a competitor in a marketplace is not unfair or deceptive. *Sunbelt Rentals,Inc. v. Head & Engquist Equip., LLC*, 2003 NCBC LEXIS 6, at \*145–46 (N.C. Super. Ct. May 2, 2003) ("The appellate court decisions dealing with unfair competition . . . demonstrate an awareness that competition is healthy and not to be unduly discouraged.") *aff'd* 174 N.C. App. 49, 620 S.E.2d 222 (2005). Thus, those entities who do not owe fiduciary duties to Bolier are entitled to lawfully compete with it in the marketplace. As a result, Plaintiff's claim that the sale "of competitive furniture products by Decca Home and Decca Classic" fails to allege unfair or deceptive conduct.

92. Furthermore, Plaintiff's argument is inconsistent with its admission that Bolier entered into licensing agreements for Decca China to manufacture Bolier products and sell them through other Decca entities. (SAC ¶¶ 135–37.) In essence, Plaintiff is complaining of the effects of contracts that Bolier entered into, without alleging that the contracts themselves are unlawful or impermissible.[16] In fact, Chris Plasman admits that he personally caused Bolier to enter into these licensing agreements in order to maintain a relationship with Decca China. (SAC ¶¶ 135–36.) Without more detail, Plaintiff has not sufficiently alleged unfair or deceptive conduct on the part of Defendants. In light of the above, Plaintiff has failed to state a claim for unfair and deceptive trade practices.

---

[16] The Court has found no provision in the Operating Agreement restricting Bolier's ability to enter into licensing agreements.

k. Violations of the LLC Act

93. Chris Plasman asserts individual and derivative claims against Decca USA for alleged "Violations and Breaches of N.C.G.S. § 57D." Plaintiff alleges that Decca USA's refusal to provide him with requested information and refusal to vote on items he noticed for vote at member meetings amounts to violations of N.C. Gen. Stat. §§ 57D-2-32, 57D-3-04, and 57D-3-20 through 57D-3-23. (SAC ¶ 496.) Most of those provisions, however, simply set out default rules under which an LLC may act. Section 57D-2-32 outlines what types of remedies an operating agreement may provide for breach of the operating agreement. Section 57D-3-20 sets out and explains the role of "managers." Section 57D-3-22 gives managers the power to delegate authority to others. Section 57D-3-23 substitutes the term "company officials" for "managers" in some instances. Plaintiff has not alleged that Bolier's Operating Agreement was drafted contrary to these provisions, and these provisions do not impose liability such that Chris Plasman could recover under them as he has attempted to plead here.

94. Section 57D-3-04 discusses members' information rights under the LLC Act, and section 57D-3-04(a) identifies specific categories of information that an LLC member has the right to access. The Second Amended Complaint advances no more than conclusory allegations that Decca USA has violated Chris Plasman's information rights. Furthermore, the Second Amended Complaint is entirely devoid of any allegation that Chris Plasman made an appropriate demand under the statute, which requires a member to deliver written notice to the LLC seven days

before he intends to exercise his information rights. N.C. Gen. Stat. § 57D-3-04(d). Chris Plasman's conclusory allegations and failure to allege that he satisfied the demand requirement defeats his claim under section 57D-3-04. To the extent Chris Plasman's allegations seek to enforce the P.I. Order, the appropriate avenue for enforcement is through a motion to compel or a motion for contempt in this action.

95. Finally, section 57D-3-21 simply sets forth the standard for a manager's fiduciary duty to the LLC, providing that a manger shall discharge his or her duties "(i) in good faith, (ii) with the care an ordinary prudent person in a like position would exercise under similar circumstances, and (iii) subject to the operating agreement, in a manner the manager believes to be in the best interests of the LLC." N.C. Gen. Stat. § 57D-3-21(b). Chris Plasman's claim that Decca USA breached this statutory provision is identical to his derivative claim for breach of fiduciary duty against Decca USA. Having already determined that the Second Amended Complaint fails to state a claim for breach of fiduciary duty, this claim must also fail.

l. Violations of the Wage and Hour Act

96. Chris Plasman alleges that he "was entitled to employment and wages as Bolier's CEO and President" and seeks to recover "wages from January 1, 2013 until the present" under North Carolina's Wage and Hour Act, N.C. Gen Stat. § 95-25.1 *et seq.* The Second Amended Complaint alleges that Decca USA attempted to terminate Chris Plasman on October 19, 2012. (SAC Ex. 28.) Plaintiff contends that Decca USA lacked the authority to cause Bolier to terminate Plasman's

employment. (SAC ¶ 209.) As stated above, the Operating Agreement reveals that Decca USA was entitled as the Majority in Interest to make final employment decisions, including with regard to Chris Plasman. Therefore, the Second Amended Complaint fails to allege facts showing that Chris Plasman has served as an employee of Bolier since January 1, 2013. Chris Plasman's claim for wages due since that date must therefore fail.[17]

m. Dissolution/Buyout

97.     In the alternative, Chris Plasman seeks judicial dissolution of Bolier under the LLC Act. The Court may order judicial dissolution in a proceeding brought by an LLC member "if it is established that (i) it is not practicable to conduct the LLC's business in conformance with the operating agreement and this Chapter or (ii) liquidation of the LLC is necessary to protect the rights and interests of the member." N.C. Gen. Stat. § 57D-6-02(2).[18] Having dismissed the numerous claims brought by Chris Plasman, it appears to the Court that judicial dissolution is not warranted. Any difficulty in conducting the business of Bolier and any perceived

---

[17] The Wage and Hour Act is discussed in greater detail below in association with Barrett Plasman's counterclaims. Barrett Plasman's counterclaims invoke specific statutory provisions of the Wage and Hour Act, whereas Chris Plasman's claim states that he is generally owed wages under the Act. The Court also need not go into such detail with Chris Plasman's Wage and Hour Act claim in light of its prior analysis concluding that Chris Plasman failed to state a claim for breach of contract with regard to the termination of his employment.

[18] Chris Plasman requests that the Court order a buyout of his interest and invokes N.C. Gen. Stat. § 55-6-40(h) and § 57D-6-04(d). Neither of those statutes permit the Court to order a buyout of Chris Plasman's interest. That remedy is not available to Chris Plasman under section 55-6-40(h) because Bolier is not a corporation organized under Chapter 55. Under the LLC Act, the Court can only order the judicial dissolution of an LLC, at which point the other LLC members can elect to stave off dissolution by making an offer to purchase the complaining member's interest for fair market value. N.C. Gen. Stat. § 57D-6-04(d).

harm to Chris Plasman's rights appears to arise from Chris Plasman's erroneous belief that he is or should be a 50% owner of Bolier and his erroneous interpretation of how the Operating Agreement delegates authority between member-managers and the Majority in Interest. The Court therefore dismisses Chris Plasman's request for judicial dissolution.

n. Piercing the Corporate Veil

98. Chris Plasman purports to assert a claim for piercing the corporate veil. However, piercing of the corporate veil "is not a theory of liability. Rather, it provides an avenue to pursue legal claims against corporate officers or directors who would otherwise be shielded by the corporate form." *Green v. Freeman*, 367 N.C. 136, 146, 749 S.E.2d 262, 271 (2013). Because the Court dismisses all of the causes of action in the Second Amended Complaint, there are no remaining grounds for Plaintiff's recovery under a theory of piercing the corporate veil.

B. Motion to Dismiss Barrett Plasman's Supplemented and Amended Third Party Counterclaims

99. Barrett Plasman's Supplemented and Amended Third Party Counterclaims assert claims against various Defendants for (i) violation of North Carolina's Wage and Hour Act, (ii) tortious interference with contract and prospective economic advantage, (iii) defamation, and (iv) piercing the corporate veil. Defendants move the Court to dismiss Barrett Plasman's counterclaims on the merits pursuant to Rules 8 and 12(b)(6) of the North Carolina Rules of Civil

Procedure. (Defs.' Mem. Supp. Mot. Dismiss Suppl. and Am. Third Party Countercls. 2.)[19]

### a. Wage and Hour Act Violations

100. Barrett Plasman admits that Bolier paid him for work performed through October 19, 2012, (Suppl. and Am. 3d Party Countercls. ¶ 22), but alleges that Decca USA violated sections 95-25.6 and 95-25.7 of North Carolina's Wage and Hour Act in failing to pay him for work performed for Bolier from October 19, 2012 to January 14, 2013. (Suppl. and Am. 3d Party Countercls. ¶¶ 29–34.) That window of time runs from the date that Bolier delivered Barrett Plasman a notice of termination to the time when he was locked out of Bolier's facilities. (Suppl. and Am. 3d Party Countercls. ¶¶ 20, 23, 26.) Barrett Plasman's claim is simply one for unpaid wages; N.C. Gen. Stat. § 95-25.6 mandates that employers pay employees "all wages and tips accruing to the employee," while N.C. Gen. Stat. § 95-25.7 sets forth the process by which an employer must pay outstanding wages to a terminated employee.

101. Barrett Plasman's claim for violation of the Wage and Hour Act fails for several reasons.[20] First, although Barrett Plasman's counterclaims state that he

---

[19] Barrett Plasman's Supplemented and Amended Third-Party Counterclaims incorporate by reference the Second Amended Complaint. Therefore, to the extent that Barrett Plasman's Counterclaims depend on the allegations of the Second Amended Complaint, the Court's discretionary determination that Rule 8 provides an alternate basis for dismissal of the Second Amended Complaint also applies to Barrett Plasman's Counterclaims.

[20] The Court notes that Barrett Plasman has brought this claim against Decca USA, who was not his employer. The Court believes that alone is sufficient grounds for dismissal. Regardless, the substance of Barrett Plasman's allegations would mandate dismissal even if the claim was brought against Bolier.

believes Decca USA lacked the authority to terminate him, as the Court has discussed at length previously, Bolier's Operating Agreement gives Decca USA the authority as the Majority in Interest to make such decisions on behalf of Bolier. (Operating Agreement § 6.1(a).)[21]

102. The counterclaims also fail to overcome our state's presumption that an employee is terminable at will. "North Carolina follows the at-will employment doctrine, which dictates that 'in the absence of a contractual agreement . . . establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party.'" *Brackett v. SGL Carbon Corp.*, 158 N.C. App. 252, 259, 580 S.E.2d 757, 761 (2003) (quoting *Kurtzman v. Applied Analytical Industries, Inc.*, 347 N.C. 329, 331, 493 S.E.2d 420, 422 (1997)).

103. Although the Counterclaims advance a conclusory allegation that Barrett Plasman had an oral employment contract with Bolier, Barrett Plasman does not allege that his contract established a definite term of employment. (Suppl. and Am. 3d Party Countercls. ¶ 37.) Instead, Barrett Plasman merely alleges that after he received notice of termination on October 19, 2012, he "believed and continued to believe" that Decca USA lacked the authority to terminate him and that he "was told by Chris [Plasman] that Decca USA's attempt to terminate him was ineffective." (Suppl. and Am. 3d Party Countercls. ¶¶ 18–19.) Such allegations alone are insufficient to bar application of the employment-at-will doctrine.

---

[21] The Amended Third-Party Counterclaims incorporate by reference the entirety of the Second Amended Complaint, which includes Bolier's Operating Agreement.

Moreover, the express provision in Bolier's Operating Agreement specifically grants the Majority in Interest broad power over employment decisions. (Operating Agreement § 6.1(a), (c)(ii).) Therefore, Barrett Plasman's claim for violation of the Wage and Hour Act must fail.

b. Tortious Interference

104. Barrett Plasman asserts a claim for tortious interference with contract and/or prospective economic advantage against Decca USA and Decca China. Despite including Decca China in the claim's caption, the pleading fails to allege any conduct by Decca China in the relevant paragraphs, and the Court concludes that this claim should be dismissed against Decca China.

105. Having laid out above the elements for tortious interference with contract and prospective economic advantage, the Court need not repeat them in full here. In order to state a claim, both claims require the allegation that Decca USA acted without justification in inducing a third-party to breach a contract or not enter a contract. *See supra* ¶ 59.

106. The only contract identified by the pleadings is Barrett Plasman's alleged employment contract with Bolier. (Suppl. and Am. 3d Party Countercls. ¶ 37.) The Court has already stated the rule that "[a] party to a contract, including the party's managing agent, cannot be liable for wrongful interference of the contract." *Palles*, 2009 NCBC LEXIS 37, at *15. Because Decca USA is the managing member of Bolier, it can be considered a party to Bolier's contracts and cannot be liable for

tortious interference with Barrett Plasman's employment contract with Bolier. Therefore, Barrett Plasman's claim for tortious interference with contract must fail.

107. In support of his tortious interference with prospective economic advantage claim, Barrett Plasman alleges that Decca USA, by filing a third-party claim against him, has interfered with Barrett Plasman's "other employment opportunities." (Suppl. and Am. 3d Party Countercls. ¶ 41.) To maintain an action for tortious interference with prospective economic advantage, a plaintiff must identify a specific contract between itself and a third party. *DaimlerChrysler Corp. v. Kirkhart*, 148 N.C. App. 572, 585, 561 S.E.2d 276, 286 (2002) (granting dismissal where plaintiff "failed to identify any particular contract that a third party has been induced to refrain from entering into"). Because Barrett Plasman has failed to identify a particular contract, his claim for tortious interference with prospective economic advantage must be dismissed. *See Artistic S., Inc. v. Lund*, 2015 NCBC LEXIS 113, at *31 (N.C. Super. Ct. Dec. 9, 2015) (dismissing tortious interference with prospective advantage claim where the plaintiff failed to identify a specific potential contract the defendants induced a third party not to enter).

c. Defamation

108. Barrett Plasman's defamation claim is nearly a word-for-word reproduction of Chris Plasman's defamation claim, as many of the statements alleged to be defamatory were made about both Plasmans. Thus, the Court dismisses Barrett Plasman's defamation claim as to those statements for the same reasons it dismisses Chris Plasman's defamation claim as previously discussed.

109. Only one of the alleged defamatory statements applies to Barrett Plasman alone. Barrett Plasman alleges that in the meeting with Bolier employees after the Plasmans were terminated from employment, Tin "stated Barrett is power hungry and ruled the employees with an iron fist." (Suppl. and Am. Third-Party Countercls. ¶ 46.) North Carolina law recognizes that "[r]hetorical hyperbole and expressions of opinion not asserting provable facts are protected speech." *Daniels v. Metro Magazine Holding Co.*, 179 N.C. App. 533, 539, 634 S.E.2d 586, 590 (2006). Rhetorical hyperbole may appear to assert a statement of fact, "but a reasonable reader or listener would not construe that assertion seriously." *Id.* In *Daniels*, the Court dismissed as opinion or rhetorical hyperbole statements that the plaintiff—an insurance adjuster—(i) spoke "in a Gestapo voice," (ii) acted like "the former Soviet security police," (iii) was a fascist, and (iv) intended to take the defendant "to the gas chamber". *Id.* at 540–41, 634 S.E.2d at 591. Statements that Barrett Plasman was "power hungry" and "ruled employees with an iron fist" clearly fall in line with those statements dismissed in *Daniels*. The statements are unactionable opinion or, alternatively, rhetorical hyperbole, which any reasonable listener would not construe seriously. Barrett Plasman cannot maintain a defamation claim on the basis of those statements.

d. Piercing the Corporate Veil

110. Barrett Plasman asserts a claim for piercing the corporate veil. The Court dismisses that purported claim for the same reason it dismisses Chris Plasman's purported claim for piercing the corporate veil.

## V.

## CONCLUSION

111. For the reasons stated herein, the Court hereby **GRANTS** Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint, and **GRANTS** Defendants' Motion to Dismiss Barrett Plasman's Supplemented and Amended Third-Party Counterclaims.

112. As a result, Plaintiff's Second Amended Complaint and Barrett Plasman's Supplemented and Amended Third-Party Counterclaims, and all claims and counterclaims stated therein, are hereby **DISMISSED** with prejudice.

**SO ORDERED**, this the 21st day of October, 2016.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
 for Complex Business Cases